UNITED STATES v. 679.19 ACRES OF
LAND, MORE OR LESS, IN McLEAN
COUNTY, N. D., et al.

UNITED STATES v. 359.29 ACRES OF
LAND, MORE OR LESS, IN MOUNT-
RAIL COUNTY, N. D., et al.

UNITED STATES v. 11,993.32 ACRES OF
LAND IN MOUNTRAIL AND McKEN-
ZIE COUNTIES, N. D., et al.

Civ. Nos. 2128, 2169, 2400.

United States District Court
D. North Dakota, Northwestern Division.

March 11, 1953.

P. W. Lanier, U. S. Atty., of Fargo, N. D., for plaintiff.

Roy A. Ilvedson and Kenneth G. Pringle (of Ilvedson, Pringle & Herigstad), of Minot, N. D., Halvor L. Halvorson, Jr., of Minot, N. D., C. A. Waldron, of Minot, N. D., C. L. Foster (of Hyland & Foster), of Bismarck, N. D., and E. Hugh McCutcheon, of Minot, N. D., for defendants.

VOGEL, District Judge.

There is here for consideration a motion in behalf of the United States for a remittitur or in the alternative a new trial in a group of land condemnation cases. In the trial, some fourteen farms or tracts of land, condemned by the United States for public use in connection with the Garrison Dam, were grouped and tried together. In effect, then, we have fourteen separate cases tried before the same jury. The trial commenced on October 16, 1952, and terminated with jury verdicts on October 30, 1952. One day of such period was consumed by the jurors in viewing the fourteen tracts of land which they were to evaluate.

In the Government's original motion, some twelve separate grounds are set forth as a basis therefor. Government's counsel, however, in his brief, consolidates his argument into six points which will be discussed by the Court in the order in which they appear in the Government's brief.

### Point I.

The verdicts are excessive.

In writing this memorandum, the Court must rely upon its memory of the testimony and its own notes, as no transcript of the evidence was made or supplied. Generally speaking, the expert witnesses who testified in behalf of the United States relied substantially upon what they termed sales of comparable land in the vicinity where these were located. Their estimates of market value run considerably below the verdicts found by the jury. As opposed thereto, the landowners and their expert witnesses claimed that there were very few sales of lands which were comparable and they relied, at least to a substantial extent, on use value. They did introduce evidence of the

592

sales of school lands at public auctions, being unimproved quarter-sections of land owned by the State of North Dakota which sold for prices comparable to the estimates of value placed on these lands by the landowners' witnesses. The jurors' verdicts rest somewhere in between the values found by the Government witnesses and the values found by the landowners and their witnesses.

The Court views this situation, insofar as the claimed excessiveness of the verdict is concerned, as it viewed a similar situation in the case of United States v. 443.6 Acres of Land in Barnes County, N. D., D.C., 77 F.Supp. 84. The Court can add little to what it said in that case and the Court feels that the opinion expressed in that case is applicable to the situation with which we are here confronted.

 The Government's counsel believes that the greater, if not the entire weight of the evidence should be placed on the valuations found by the Government experts in that they prefaced their findings upon alleged comparable sales. Witnesses for the landowners denied that the sales testified to by the Government witnesses were comparable and in turn used the sales of school lands at public auction heretofore referred to. This presents merely a question of how much weight should be given to the testimony of the witnesses and, of course, that is a jury question. The Court cannot find that the values found by the jurors were not supported by substantial testimony and even if the Court believed that such values might be somewhat high, the Court nevertheless does not have the right to set aside or reduce the verdicts because of a disagreement with the jurors on questions of fact where the findings of the jurors are supported.

In a very recent case, the Court of Appeals for this Circuit, in United States v. Ham, 187 F.2d 265, 267, stated, in connection with a similar problem:

"On the government side greater weight and importance was claimed for the element of sales value and on the owner's side the stress was on the probative force of the use value. To fairly try the issue and determine just compensation in this case it was necessary for the jury to consider both sides of the dispute and to weigh the evidence of use value which tended to enhance compensation for the taking against the evidence of the sales value which tended to diminish it, and the duty rested on the court to conduct the proceedings of the trial so as to obtain fair and impartial consideration of both sides."

The Court feels that that was exactly what was done in this group of cases and that it would be improper for this Court to set aside the jury verdicts as excessive where the jurors have had before them evidence on both sides of the question. Here landowners and the Government were allowed to present "all facts which an ordinarily prudent man would take into account before forming a judgment as to the market value of property he contemplates purchasing * * *." Clark v. U. S., 8 Cir., 155 F.2d 157, 162. To disturb the findings of the jury under such circumstances seems to the Court unjustified.

Point II.

The Court erred in refusing to strike the testimony of Andrew Sathe on the grounds that he failed to qualify as an expert and because his testimony was wholly incompetent and immaterial.

 Andrew Sathe appeared as an expert witness in behalf of the landowners. He testified originally on the second day of the trial. He gave a long history of land appraisal experience with the Federal Land Bank, the Bank of North Dakota, the United States Department of Agriculture, the Farm Security Administration and the Department of Interior, Bureau of Reclamation. He had resigned his position with the Government not long before the trial of this group of cases and was then personally engaged in farming. He has appeared in this court as an expert witness testifyng to land values in behalf of the Government in other cases. Originally, his qualifications to testify as to market value were not questioned by Government counsel. On the fifth day of the trial and after Sathe had, without objection, expressed his opinion as to market values regarding a number of

other tracts, counsel for the Government subjected him to a belated and additional cross examination, the substance of which was to the effect that his estimates of value were not based upon what an informed seller and an informed buyer would agree to under the circumstances because he had not had sufficient opportunity to investigate. He then got into more or less of an argument in which he claimed that the more modern and efficient method of arriving at the value of lands was through evidence of use value instead of comparable sales, subsequently admitting, still on cross examination, that when he had testified in behalf of the Government at prior trials he had used numerous comparable sales upon which to base his then given estimates of value.

Sathe's testimony on cross examination did tend to diminish the weight that the finders of fact would give to his opinion, but it did not make his opinion completely incompetent nor at that time justify the Court in striking all of his prior testimony. The Court feels that no error was committed therein.

### Point III.
#### The Court erred in permitting the witness Felix Adams to testify.

Felix Adams, at the time of trial, was an employee of the United States connected with the Soil Conservation Service. He was on annual leave from his employment at the time of trial and present in court in answer to a subpoena in behalf of the landowners. He had been attempting to prepare himself to become an expert land appraiser. He had been employed by the landowners to examine their various tracts of land and testify mainly with reference to the different soils and their productivity. Government counsel directed attention to Title 18 U.S.C.A. § 283, which, in substance, prohibits an officer or employee of the United States or any department or agency thereof from acting as agent or attorney for prosecuting any claim against the United States or aiding or assisting in the prosecution or support of such claim other than in the proper discharge of his official duties.

Government counsel protested the use of the witness Adams by the landowners. The matter was discussed at some length in chambers. Adams was informed of the statute relied upon by the Government and subsequently, on the witness stand, refused to testify on the grounds that to do so might incriminate him. The Court felt that the statute was not applicable to the situation then confronting the witness and held that his testimony was competent and directed him to answer. Incidently, in that regard it was brought out that in examining the landowners' farms Adams had done so on his own time and had made use of nothing belonging to the Government with the possible exception of tract maps which were available to anyone who asked for them.

The identical situation with reference to the witness Adams arose in the second group of condemnation cases which was tried immediately following this one. In that case, the Government's objection to Adams' testimony was much more strenuously argued. The Court felt in both cases and still believes that the statute relied upon by the Government was not a bar to the giving of the testimony by the witness Adams for several reasons:

First, the statute did not have in contemplation a situation such as that with which we are here dealing. The statute was passed by the Congress for the purpose of preventing Government employees from making use of private Government information to assist persons who had claims against the United States.

Second, it was also passed by the Congress for the purpose of prohibiting Government employees who had access to Government files from obtaining therefrom information regarding persons who might possibly have claims against the Government and then soliciting the representation of the owners of such claims or assisting them in some way, thereby earning fees.

In addition to the foregoing, the Court does not believe that the rights of landowners in condemnation cases constitute "claims" against the Government with-

in the purview of the statute. The landowners here are not the plaintiffs. They are not claimants. They are, in fact, the defendants. The Government itself is the plaintiff and attempts by these actions to take the lands and has asked this Court to give it title thereto. As a natural part of that process of condemnation and by reason of the Fifth Amendment to the Constitution, it is necessary that the market value of these lands be established.

The witness Adams, while a Government employee, was employed by the landowners during his spare time and his annual leave to examine the soil on their various farms and accordingly give testimony with respect thereto. He obtained the consent of his superiors before he undertook employment by the landowners.

The Court is of the opinion that no error was committed in allowing him to testify.

### Point IV.

The Court erred in permitting the witnesses for the landowners to give evidence of values of buildings and improvements in dollars and cents separate and apart from their values of the farming units as a whole and in compelling Government's witnesses to give like evidence.

Landowners and their expert witnesses were without exception first asked to express their opinion of the overall market value of each tract involved. After giving such overall value, they were then *asked to explain how they arrived at that figure* and in doing so, they were allowed to testify to what was referred to as a "breakdown" of their figures. In so explaining their overall valuations, they testified to the use value of various improvements to the farming unit, the value of pasture land and the value of cultivated portions. The Court believes that the method used by the landowners was entirely proper and was helpful and enlightening to the jurors. Such breakdown of values *after giving an opinion with reference to the overall market value* has been used in this court for many years and has been used by both the Government and landowners alike.

In this particular group of cases, however, the Government's witnesses did not,

on direct examination, give any "breakdown" but in some instances *on cross examination* they were asked how much the improvements contributed to the overall value of the farming unit. The Court sees no error in allowing such direct testimony nor in allowing the landowners' counsel to conduct a cross examination on the same lines. Certainly an ordinarily prudent person contemplating the purchase of a farm would want to know something about the value of the improvements to the farm itself, whether or not it was overbuilt and the condition of the improvements. A new, large stock barn located on a farm possessing no pasture, no water for stock, and having only cultivated lands is not as valuable to the farming unit as if located on a farm possessing the proper balance between pasture, hay and cultivated lands. The new barn may have cost $10,000, but what is its value to such a farming unit? To withhold from a jury evidence of the value of improvements to the farming unit would be to ask them to fix valuations without complete information and to assess the weight to be given an expert's opinion without being allowed to know how he arrived at that opinion.

The Government objects to its witnesses being compelled on cross examination to give opinions on the values of improvements to the farming unit. To have sustained its position would have been to abrogate the absolute right of cross examination and would have amounted to prejudicial error which would have warranted a new trial in behalf of the landowners. The unfairness of such position is clearly illustrated in the instance of the cross examination of one of the Government witnesses herein. Such witness on direct examination described the farm and then gave his opinion of overall value. On cross examination, probably over objection, he was asked how much the various improvements contributed toward his overall valuation. A new house was involved. In substance, he stated that a new house on a farm did not give it any greater value than an old one and that he had had that in mind in giving his opinion of overall market valuation. To have prevented the landowners from disclosing this

on cross examination would have been error. The point raised by the Government herein seems to the Court to be without substance.

Point V.

The landowners failed to sustain the burden of proof; the verdicts were against a preponderance of the evidence and the law.

 In connection with this point, and this is applicable to some of the other points raised by the Government as well, the landowners' attorneys have furnished to the Court a summary sheet showing the high Government appraisals on each tract, the owners' highest appraisals, the verdict, the percentage of increase over the Government's valuation and the valuation per acre. This chart indicates that the jury verdicts averaged 73.6% increase over the Government witnesses' appraisals but were nevertheless well within the estimates of values testified to by the landowners and their witnesses. The Court cannot say, under the circumstances, that the landowners, who had the burden of proof, failed to sustain the same or that the verdicts were against a preponderance of the evidence and the law, even though such verdicts might be in excess of the Court's own opinion regarding the market values of the lands involved.

Point VI.

The jury failed to follow the instruction of the Court.

The Government's main objection in connection with this point seems to be that the jurors failed to give sufficient weight to the testimony of the Government experts. This point has been covered heretofore.

In a letter to this Court dated February 25, 1953, counsel for the Government calls attention to the case of U. S. v. 5139.5 Acres of Land in Aiken and Barnwell Counties, S. C. Tract No. D308, 4 Cir., 200 F.2d 659, 662, which in part has to do with a trial court's refusal to charge the jury in a condemnation case that:

"Generally speaking, recent sales of similar parcels furnish the most desirable basis of fixing market value".

The record herein indicates that no exceptions were taken by any of the attorneys to the Court's charge and failure to so instruct is not made one of the grounds set forth in the Government's present motion. Accordingly, it does not seem that error could be predicated thereon.

Regardless of that fact, it seems to the Court that this is nothing more or less than an attempt on the part of one side to get the Court to comment on the evidence and to express an opinion with reference to the weight that ought to be given to some of it. While well recognizing the right of a Federal Court to comment on the evidence and express an opinion with reference thereto, this Court has exercised that right most sparingly and did not at the time of trial feel that the circumstances herein justified doing so.

The motion will be in all things denied.

It will be so ordered.