UNITED STATES of America,
Appellant,

v.

Arthur E. BAKER, Doris M. Baker, John
L. Roach and Bettie Jo Roach,
Appellees.

No. 16461.

United States Court of Appeals
Ninth Circuit.

May 24, 1960.

Perry W. Morton, Asst. Atty. Gen., Jack D. H. Hays, U. S. Atty., Phoenix, Ariz., William E. Eubank, Asst. U. S. Atty., Phoenix, Ariz., Roger P. Marquis, Robert S. Griswold, Jr., Attys., Dept. of Justice, Washington, D. C., for appellant.

Paul LaPrade, Louis B. Whitney, Loretta Whitney, Phoenix, Ariz., for appellees.

Before STEPHENS, BARNES and MERRILL, Circuit Judges.

BARNES, Circuit Judge.

This was a condemnation proceeding. The jurisdiction of the district court arises under Title 28 U.S.C. § 1358. A jury returned a verdict for the property owners in the sum of $165,500 from which judgment the government appeals. This Court has jurisdiction under Title 28 U.S.C. § 1291.

The government bases its appeal on the failure of the trial court to instruct the jury properly in two respects. It first complains that the trial judge refused to give a requested instruction on comparable or similar sales as the best evidence of market value. The government secondly complains that the jury should have been instructed to disregard the use to which the government intended the land put in their consideration of its market value.

The land subject to condemnation in this case consisted of 132.4 acres of a 513 acre truck and cotton farm located on the road joining Luke Air Force Base with Phoenix, Arizona. The land was

being condemned for use as a Capehart Housing project for the military personnel at Luke Air Force Base. The witnesses for the government testified that the land was worth $92,860 and $93,000. The witnesses for the appellees testified that the land was worth, including severance damages to the remainder, $269,280 and $232,300. It is noted that the jury's verdict is almost midway between the value claimed by the government and the lower figure given by the appellees' witnesses.

The theory of the government witnesses was that the land should be valued as farming land with some incremental amount for its potential as a residential subdivision. The government witnesses refused to recognize any severance damages, stating that any damage would be merely one of the factors to be taken into consideration when considering an offer at an inflated price for the portions suitable for residential purposes. The government witnesses attempted to rely in a large measure on alleged comparable sales of farming land in the vicinity. At least one of these sales was ruled inadmissible as being too remote in point of time. The other comparable sales were farm land on the other or far side of the air base from Phoenix. The condemned land was between Luke Field and Phoenix. The far land was without the advantageous location on arterial roads possessed by the land against which this condemnation action was brought.

The witnesses for the appellees testified that they did not consider any of the sales relied upon by the government witnesses as comparable; and further, that no comparable sales existed upon which value could be estimated. Their testimony was based upon general expertise in valuing land, and their own judgment as to the prospects for future residential development of the area.

Under this state of the evidence, the court refused to instruct the jury as follows:

"Comparable sales, at arms length, in the open market of real property, often referred to as similar sales, that occurred before the date of taking, are the best evidence of market value."

(Government's Req. Inst. No. 7.)

The appellees' witnesses developed the general desirability of the tract in question for such a housing development. The land was physically suitable for building, was located outside the "noise clearance zone" established for Luke Air Force Base, and was near the base and adjacent to the main roads in the area. While a subdivision which had previously been attempted in the area had met with little success, it developed that that tract, besides being less favorably located, had been opened before Luke had been made a permanent installation in 1956. The permanency of the base was a controlling factor in the desirability of land in the area for housing purposes. Further, the former subdivision was developed on a modest scale, lots being sold rather than houses, and financing was not provided.

At the request of the government the jury was given a view of the premises upon which construction of the housing had already commenced. The government requested the following instruction as to government use, only the italicized portion being given:

"With regard to the view that you took of the Tract Friday afternoon, you are directed to remove from your consideration of Market Value the fact that the Government is presently making use of the condemned tract of land. You are to valuate the farm in the condition that it was in on March 11, 1957. The testimony of the Government's and Defendants' witnesses will be helpful to you in recreating the condition of said tract at that time.

You are further instructed that the Defendants are not entitled to compensation for loss of any future gain they might have hoped to realize from the tract over and above its fair market value. This is true also with respect to the government. *You are not to consider any personal loss or gain to either party. Market*

*value of the property on the date of taking is the only problem under consideration."*

(Government's Req. Inst. No. 11).

The government asserts that it was error for the judge to refuse to instruct the jury that comparable sales are the best indication of fair market value. The appellees do not controvert the truth of this proposition once such sales have been introduced in evidence, but urge that such an instruction would be inappropriate under the state of evidence in this case. The appellees point to the controversy over whether the sales relied on by the government witnesses actually were comparable. It is clear that the only relevance of the sales relied on would be to show the value of the land strictly as farming land, since the other sales were of isolated areas on the side of the base away from the established centers of population. It was established that strictly as farming land the areas were comparable, the same crop and approximately the same water potential existed. But it is clear that the other areas were of no help in determining the value of the land for residential purposes. The witnesses for the appellees testified that the highest and best use for the tract in question was not for farming, but rather for residential areas to meet the recently developed need for housing attendant on the permanent status given to Luke Air Force Base. The appellees contend that to give the instruction requested would invade the province of the jury in deciding the question whether the sales testified to were in fact comparable. They claim that effect of the instruction would have been to preclude that issue from the jury's consideration, and force the jurors to ignore the evidence of the defendants based on an entirely different theory than that of the government, since *no* comparable sales were in fact introduced by appellees.

The government relies primarily on United States v. 5139.5 Acres of Land, etc., 4 Cir., 1952, 200 F.2d 659, and United States v. Ham, 8 Cir., 1951, 187 F.2d 265. The 5139.5 Acre case is at best equivocal. In that case the reversal was based on the refusal to admit evidence as to adjacent sales. The court went on to say that if the evidence should be admitted on retrial, such instruction "would be proper." The court stated that on the existing state of the record, *with no evidence of comparable sales before the jury,* the refusal of such instruction would *not* be prejudicially erroneous.

The Ham case is not directly in point, though it is strong support for the general proposition that comparable sales are the most important factor to be considered, *i. e.,* are the *best* evidence. But what is the best evidence is comparative. In the Ham case the landowner was asserting a "use theory" of valuation and the government was asserting a "comparable sales" theory. The attitude of the trial judge in emphasizing the defendant's theory to the exclusion of the government's prevented a fair trial. The trial judge excluded erroneously certain of the evidence of comparable sales, and refused to instruct the jury as to the weight to be given to comparable sales in deciding market value. In the Ham case there was no dispute as to the comparability of the sales. This dispute is present in the instant case.

The government points to the instructions given in Carlstrom v. United States, 9 Cir., 1960, 275 F.2d 802, as being indicative of correct trial procedure. But an examination of those instructions shows that not only did the court instruct the jury that comparable sales were the best indicator of fair market value, but also admonished the jury that such sales were to be considered only *if* the jury found the sales to be comparable.[1] The instruction requested and refused in this case does not reach the jury's first responsibility of determining whether the comparability of sales is an issue.

United States v. 679.19 Acres of Land, etc., D.C.N.D.1953, 113 F.Supp. 590, lends some support to the position

1. Carlstrom record, p. 2093.

of appellees, though in that case the government did not request instructions and the issue did not arise in the precise context present here. While it may well be that the government is ordinarily entitled to some instruction on comparable sales, it was not entitled under the facts of this case to the instruction requested, since it placed unwarranted weight on the theory of the government.

The second asserted error in instruction depends upon several assumptions of fact as to the residential possibilities of the tract, and to the method used in valuing the land by the jury. The government contends that the jury must have considered the value of the land to be what it would have if actually, and not potentially, used for a residential subdivision. The government further assumes that the jury gave no severance damages, though this would seem impossible of accurate ascertainment under the general verdict returned. The evidence introduced by the appellees is predicated on the assumption that there was a market for the property as subdivision land at the time of the taking.

■■■■ For two reasons the government's position is not well taken. First: The other instructions given cure any defect arising from the failure to give the omitted instruction. Second: The severance damages, sought by appellees, were based, among other factors, on the uncondemned farm land left surrounding that condemned, and the problems arising from a farmer's attempting to "dust" his farm with chemicals when his farm surrounded residential buildings. The fact that there was a contemplated use of the condemned property for residential purposes was essential to an understanding of the severance problems, and the amount of probable damages occasioned thereby.

This is not a case of the government having to pay a higher price for a demand created by its own activities. Here residential possibilities were created by the government's act in making Luke a permanent base, but the tract here in question was not contemplated in the original taking for the base. The surrounding landowners benefited from the governmental activities prior to the instant taking, and not from the use by the government subsequent to the taking.

Some thing is said on both sides about the reasonableness of the verdict. With the conflicting theories, it is hard to come to a precise conclusion on this point. The issue of severance damages further clouds the issues. There was evidence that the remainder of the tract would suffer heavily from the instant condemnation, both as farming land, and as potential commercial and industrial property. The land taken was in the middle of the whole tract. The existing water distribution systems would have to be changed as a result of the taking. The proximity of the housing development would make any crop dusting operations on future cotton crops very dangerous, perhaps prohibitively so. The area remaining with commercial zoning is too small to retain much commercial value.

The confused theories make it difficult to weigh the jury's verdict. It is possible, however, to explain the verdict based only on the government's farm use theory, combined with the appellees' severance damage theory. This would explain the amount of the verdict without need to resort to commercial versus residential possibilities at all.

We cannot say the amount of the judgment is such as to shock the conscience, or be clearly erroneous.

Affirmed.

MERRILL, Circuit Judge.

I concur.

As to the comparable sales instruction, however, the basis for my judgment differs from that of my associates. In my view, the court properly refused this instruction for the reason that there was no evidence of sales which would warrant the giving of the instruction.

Testimony with respect to comparable sales was given, as foundation for their opinions, by the expert witnesses called by the government. They testified that

they had checked into sales of other lands and had taken such sales into consideration in arriving at their appraisals of the condemned property. Data relating to such sales were not given to the jury. There was no proper direct proof of any one sale.[1]

The evidence thus was not such as would allow the jury to determine for itself the fact and nature of any sale. Its only effect was to add weight to the opinions expressed by the government witnesses: a matter for argument and not for instruction.

---

[1] One witness testified that he had talked to a subdivider; that he had found out the price the subdivider had paid; that it was $198.44 per acre. Although such information is sufficient basis for opinion, it is not competent evidence of the sale itself. United States v. 5139.5 Acres of Land, etc., 4 Cir., 1952, 200 F.2d 659, 662. Cf., National Bank of Commerce v. City of New Bedford, 1900, 175 Mass. 257, 56 N.E. 288, 290. See 2 Wigmore, §§ 562, 655 (3rd Edition, 1940).