**UNITED STATES v. HAM et al.**

**No. 14165.**

United States Court of Appeals
Eighth Circuit.

Feb. 6, 1951.

Julius Skaug, Mobridge, S. D. (H. F. Fellows, Rapid City, S. D., and Pat Morrison, Mobridge, S. D., were with him on the brief), for appellees.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is taken by the United States to reverse a judgment rendered pursuant to jury verdict fixing the amount of compensation for the taking of land in condemnation proceedings instituted under 40 U.S.C.A. § 258a. The appellant asserts errors committed in receiving and in excluding evidence and in the instructions to the jury. It also contends that by reason of the court's erroneous declarations, rulings, and conduct of the trial, the appellant was denied a fair and impartial jury trial on the issue of the amount of compensation.

The appeal brings up for review that part of the judgment which awards $35,100, or $45 an acre, for 780 acres of farm land in Perkins County, South Dakota, taken for use in connection with the Missouri River Basin Project, Grand Division, Shadehill Unit, on April 20, 1949. The land was good, level land used for farming and the improvements on it were of small value. The market value of it at the time of the taking was the only issue for the jury.

The government's estimate and deposit made at the time of the taking was $21,140, or at the rate of about $27 an acre, for the 780 acres. The owner claimed for it a value of from $60 to $65 an acre. The qualified expert witnesses for the government based their estimate in large part upon prevailing sales prices of the same and comparable farm lands in the area. The owner relied heavily on his showing that in certain years the land had produced large crops that brought high prices and resulted in large net income to the owner. The government did not dispute that the land had produced large income as claimed nor did it deny that such productivity or

Harold S. Harrison, Department of Justice, Washington, D. C. (A. Devitt Vanech, Asst. Atty. Gen., Leo P. Flynn, U. S. Atty., Sious Falls S. D., and Roger P. Marquis, Department of Justice, Washington, D. C., were with him on the brief), for appellant.

use value of the land was competent to be considered by the jury in determining the amount of compensation. But its position was that the valuation at which the same land and comparable lands in the area were freely sold was also an element that had to be considered in order to fix fairly the amount of compensation. The land lies on the northernmost edge of the western part of South Dakota and though it might at times be made to produce as much as a like-sized farm in the best of Iowa its market value might still be less than that of the Iowa farm.

▆▆▆▆ Though the procedure in the condemnation did not include an exact definition of issues by pleadings, it was apparent from the inception of the trial that the dispute between the government and the landowner turned upon the weight which should be given by the jury to the several elements which must be considered together to establish the market value, particularly the element of use value and the element of sales value. On the government side greater weight and importance was claimed for the element of sales value and on the owner's side the stress was on the probative force of the use value. To fairly try the issue and determine just compensation in this case it was necessary for the jury to consider both sides of the dispute and to weigh the evidence of use value which tended to enhance compensation for the taking against the evidence of the sales value which tended to diminish it, and the duty rested on the court to conduct the proceedings of the trial so as to obtain fair and impartial consideration of both sides. As stated in 29 C.J.S., Eminent Domain, § 286, "The remarks and conduct of the judge presiding in the trial or assessment of damages before a jury in condemnation cases should be such as will promote a fair and impartial trial." Or as stated in 29 C.J.S., Eminent Domain, § 273, "Subject to this limitation [competent under the general rules of evidence], no evidence should be excluded which an ordinarily prudent man would take into account before forming a judgment as to the market value of property which he is about to purchase."

The court recognized its duty in the abstract. It stated to the jury, " * * * you should consider all of those things which a prudent and reasonable buyer and seller would naturally consider, discuss and take into consideration in event of the sale of the property." This statement of the law is in accord with that of the Supreme Court in Olson v. United States, 292 U.S. 246, loc.cit. 257, 54 S.Ct. 704, 709, 78 L.Ed. 1236, where the court said, "In respect of each item of property that value may be deemed to be the sum which, considering all the circumstances, could have been obtained for it; that is, the amount that in all probability would have been arrived at by fair negotiations between an owner willing to sell and a purchaser desiring to buy. In making that estimate there should be taken into account all considerations that fairly might be brought forward and reasonably be given substantial weight in such bargaining. Brooks-Scanlon Corp. v. United States, 265 U.S. 106, 124, 44 S.Ct. 471, 68 L.Ed. 934. The determination is to be made in the light of all facts affecting the market value that are shown by the evidence taken in connection with those of such general notoriety as not to require proof."

But the record clearly shows that the trial court was of the opinion that the owner's showing of production and net income derived from the land in the period covered by his testimony, referred to by the court as the evidence of the "use value" furnished the true criterion of the value of the land and of the compensation that ought to be awarded by the jury. Throughout the course of the trial the court repeated and impressed this view upon the jury. The government contends that it was contrary to law and erroneous. It asserts error in respect to the following declaration of the court, as a typical one made during the trial: "The only value a farm has is the use value and the use value can only be determined by what the land produced." Appellant also complains of the court's rulings holding evidence of prior sales of the property involved and prior sales of comparable property in the area to

be inadmissible.[1] Appellant also asserts error in respect to the court's instructions to the jury which were duly excepted to. It contends that the court's declarations, rulings and conduct of the trial resulting from the erroneous view of the law prevented fair consideration by the jury of the government's claims in the dispute on valuation. It contends that the expressions and rulings of the court unduly and un-

1. The rulings may be summarized under two headings: (a) rulings on the admissibility of prior sales of the same property, and (b) rulings on the admissibility of prior sales of comparable property.

Some examples of the rulings under (a):

"Q. What did you pay for the land in 1946?

"Defendant's counsel: Objected to as incompetent, no proper foundation laid.

"The Court: Sustained.

\*   \*   \*   \*   \*   \*

"Q. How did you happen to buy it [a portion of defendant's land bought from the Federal Land Bank]?

"Defendant's counsel: Objected to as immaterial to the issue here.

"The Court: I don't see the materiality of it.

"Government counsel: We would like to show this land was on the market for sale.

"The Court: It is not a question what the land sold for in 1946. The question is what was it worth on the day it was taken. Somebody might have given him the land in 1946.

"Government counsel: We want to show it was on the open market for sale. It is in the same condition.

"The Court: That doesn't make any difference. The question is what was the fair market value of that land on the day it was taken.

\*   \*   \*   \*   \*   \*

"Q. I am talking about the land that the government is now taking for public purposes from Mr. Ham. Wasn't that for sale in 1946 to your knowledge?

"Defendant's counsel: Objected to as improper cross-examination. Immaterial.

"The Court: I don't see but what it is proper cross-examination, but I don't see the materiality of it.

"Government counsel: It goes to the witness' qualifications to testify to land value in that area.

"The Court: As to that it would be proper cross-examination. The fact that this land was for sale in 1946 and the fact it was sold in 1946 hasn't any bearing on the real question in this case.

\*   \*   \*   \*   \*   \*

"Q. How many acres of wheat did you see there in that field?

"Government counsel: We object to that, in 1944. In 1944, according to stipulation filed in this case, Mr. Ham did not own this land.

"Defendant's counsel: Preliminary to foundation for value.

"The Court: I presume the purpose of the question is to show the quantity of wheat raised on that land in that year. Of course, it is all part of the evidence tending to prove the value of the use of the land, regardless of who owned it at that time. Objection overruled.

"Government counsel: You would not allow us to show the sale in 1946 of the particular land.

"The Court: The sale price of it in 1946 and 1948 would not have any bearing on it. A man may sell it because he had to sell it. A man may buy it and be willing to pay a lot more than it is worth. If we open up that field we will be here all winter trying this case.

"Government Counsel: We stipulated in 1946 we were not forced to sell and they were sales between a willing buyer and a willing seller.

"The Court: If you have any such stipulation I don't remember it.

"Government counsel: We didn't stipulate it. We offered to prove it.

"The Court: I know you offered to prove it. I sustained the objection to it. I am not going to open that field up. If you open up that field we will be going into the value of every quarter of land around there.

"Government counsel: I am not offering forced sales.

"The Court: I have indicated to you I am not going to permit any of that evidence in. I don't care how many sales you have. I am not going to open up that whole proposition. I want to try this law suit and find out what the reasonable value of the damage to this man by the taking is. That is the only thing I am going to try. The objection is overruled."

\*   \*   \*   \*   \*   \*

(b) Sales of comparable land. The court's rulings affected both plaintiff and defendant in their offers of evidence. In the first instance the defendant was prevented from putting in such evidence.

"Q. In the land that you purchased in 1949, that is this year, the half section, was that all level land? A. No.

fairly magnified the effect of defendant's testimony as to the large production in certain years and disparaged and minimized the testimony concerning the prevalent low selling prices offered for the government.

The trial court's attitude led it so far as to exclude evidence offered by the government tending to show (as indicated by the government's offer of proof) that defendant, as a willing buyer, had purchased the land in question in three parcels from three different willing sellers in 1944 and 1946, along with a further showing as to the price then paid for the land. The owner's objections to the evidence and to the offer of proof were sustained.

The record shows the court did not exclude this evidence because it was too remote in time, or because the land had undergone great changes, but as it stated, because, " * * * the fact it was sold in 1946 hasn't any bearing on the real question in this case". The court gave no consideration to whether the evidence offered would have been relevant, competent, and helpful to the jury in presenting the proper elements of market value, but instead the evidence was excluded as being of no importance as compared with the evidence of earnings received from the land about the same time.

█ We think the opinion and conclusion of the trial court were erroneous and that by applying them in the case injustice was done to the government. Evidence of prior sales and of prevailing prices within the area has always been held to be probative and admissible as tending to show market value of farm lands taken in con-

"Q. How much of that half section was there you could break and would be good plow land or farm land? A. 220 acres.

"Government counsel: Objected to as irrelevant and immaterial.

"The Court: It is immaterial.

"Defendant's counsel: I want to add it to the weight of his knowledge of sixty dollars per acre. I want to consider the land and show what he paid for it right up in that locality. What he paid for it in 1949. And I have another three quarters in 1948.

"Government counsel: If they can show what this man paid they can show it as to other and different land.

"The Court: I don't think what a man paid for a tract of land, similar land, would be a criterion.

"Defendant's counsel: I thought it might be some evidence to support his testimony.

"The Court: The difficulty is if you open the subject up you open up a pretty big territory. You can find a man who wanted a piece of land for some particular purpose who paid more than it is worth."

\* \* \* \* \* \*

In that particular instance defendant was prevented from showing what other land was bought for. Later in the trial when the government sought to go into prices of comparable land the following occurred:

"Q. Do you know, as a matter of fact, that similar land to the Ham land can be got for twenty-five dollars an acre in that vicinity?

"Defendant's counsel: Objected to as immaterial; calling for incompetent testimony.

"The Court: Sustained.

"Q. Do you own land of similar nature, grain land in the Ham vicinity? A. Yes.

"Q. How far is it from Ham's ground? A. About six or seven miles.

"Q. Would you be willing to sell that land you own for twenty-five dollars an acre?

"Defendant's counsel: We object to that for the same reason. It is now misconduct of counsel. He knows the court has held you can't inquire into that line of testimony.

"The Court: Sustained.

"Defendant's counsel: He ought to be admonished to stop that kind of stuff.

\* \* \* \* \* \*

"Q. How many other sales do you know about in that particular Ham area where you sold, between a willing buyer and willing seller?

"Defendant's counsel: We object to that as no foundation. It would be a conclusion of the witness. He doesn't know what was in the minds of these people whether they were willing or not; incompetent; hearsay.

"The Court: The only purpose of it would be to establish his competency to testify as an expert here. I don't want to go into the sales of any other land, and I am not going to open that field up at all."

demnation. See United States v. Becktold Co., 8 Cir., 129 F.2d 473, 479 (sale in 1925 held properly admitted when taking was in 1939); Love v. United States, 8 Cir., 141 F.2d 981, 983 (sale in 1933 held properly admitted when taking was in 1940); Dickinson v. United States, 4 Cir., 154 F.2d 642, 643 (sale in 1937 held properly admitted when taking was in 1943). All of these cases of course recognize the discretion vested in the trial court to hold the trial within reasonable limits and to exclude remote or nonprobative transactions. But here the trial court's refusal to let the jury consider evidence of the prior sale of the same property and proof of other sales reflecting market value did not result from exercise of such discretion. The court merely applied its conclusion and opinion that the fair market value of the land taken should be determined on its use value only.

The court presented its position clearly when it excluded proffered evidence of prior sales of comparable land. Such evidence is generally held admissible, particularly in the federal courts. Indeed, in Baetjer v. United States, 1 Cir., 143 F.2d 391, 397, the court said, "What comparable land changes hands for on the market at about the time of taking is usually the best evidence of market value available." Similarly, in Welch v. Tennessee Valley Authority, 6 Cir., 108 F.2d 95, 101, "Sales at arms length of similar property are the best evidence of market value." Of course the other sales must be recent, the lands sold similar, and the parties involved must be willing buyers and willing sellers, and in those regards the trial court will exercise its discretion. But in the present case the type of evidence offered was excluded entirely and not with regard to any particulars of specific sales. The government was erroneously denied a fair opportunity to submit to the jury its claims as to the weight to be given the proof of sales. Such claims constituted its side of the case and it was error to exclude the supporting evidence.

The fundamental error was carried through into the court's instructions to the jury. The court gave a general instruc-

tion that market value was that amount which would be agreed upon by a willing seller and a willing buyer. Exception to this instruction was taken by the landowner, who contended that the court "overlooked telling the jury that the income from property is one of the elements to be taken into consideration in determining its value." The court then instructed the jury as follows: "In determining the fair market value of a piece of property you should take into consideration the location of the property, the character of the soil, if it is farm land, the productivity of it over a term of years, the location of it as to market, school and church, the neighborhood that it is in, you should consider all of those things which a prudent and reasonable buyer and seller would naturally consider, discuss and take into consideration in event of the sale of the property under the conditions that I have explained to you."

The instruction as far as it goes cannot be complained of, but the studied lack of comment as to the effect of sales of comparable property at the time of taking stands out. The government brought this omission to the attention of the court by proper exception and request, but the court refused to add to the instruction it had submitted to the jury. Adhering to the opinion we have found to be erroneous, it refused to tell the jury to take into account and consider what land in the neighborhood was being sold for at the time of the taking.

The record also discloses the following erroneous ruling prejudicial to the government for which reversal should be granted. As the case was tried under the rulings and declarations of the court the evidence of the net income received from the farm land at the times shown was practically the sole criterion by which the jury was allowed to determine the amount of compensation. Other than that the court allowed both sides to submit the bare opinions of experts as to how much an acre the land was worth. The amount of net income therefore became all important in the case. The landowner undertook to show it by the introduction of detailed

schedules prepared by him, reflecting total receipts and expenses connected with the land for the years 1946, 1947, and 1948. The government did not object to the introduction of these schedules, but on cross-examination it undertook to question the landowner as to whether or not, in computing the expenses, the taxes on the land, depreciation on machinery used and repairs thereof had been taken into account. Objections were made on behalf of the landowner to all of these questions as immaterial, and the objections were sustained. This action of the court was obviously mistaken. There was no reason why the government should be forced to accept the figures of net income introduced by the landowner as finally determinative and its right to cross-examination as it attempted to exercise it was an absolute right. The curtailment of the government's right of cross-examination was prejudicial error.

 Use value as reflected by net income as a criterion by which to determine market value of farm lands has many frailties because it is dependent upon many uncertain and variable factors. Among these may be mentioned skill of husbandry, weather conditions, market conditions, cost of labor, cost of fuel, cost of machinery, depreciation of machinery, taxes on the land, taxes on the machinery and many other factors wholly unrelated to the fertility or productivity of the soil or its capacity to produce. These factors the government had a right to go into on cross-examination if the use value or net income is to be considered as a basis for determining market value. The question for determination by the jury is the market value of the property to be taken, not the damage to the business of the owner in operating that property.

The record here convinces that the government was not accorded a fair and impartial trial on the issue of the amount of compensation due for the taking of the 780 acres of farm land in this case. The landowner's witnesses who based their opinion of high market value on the earnings from the land in certain years were given full opportunity to develop the reasons and justification of their opinions but the government's experts were denied any corresponding opportunity to justify their opposing opinions and the government's right of cross-examination was erroneously curtailed. The erroneous conclusion of the court that the revenues from the land at a certain time were to be deemed the sole criterion for fixing the compensation for its taking led to the exclusion and withholding from the jury of relevant, competent testimony proffered by the government. The government's side of the case was to practical intent kept from the view and consideration of the jury. The verdict and judgment are reversed.

Remanded for new trial in accord with this opinion.