ONEGO CORPORATION, Appellant,

v.

UNITED STATES of America, Robert L. House and Claude N. Jordan, Appellees.

No. 6658.

United States Court of Appeals Tenth Circuit.

Sept. 27, 1961.

Byran W. Tabor, Tulsa, Okl. (Rucker, Tabor, Best, Sharp & Shepherd, Tulsa, Okl., were with him on the brief), for appellant.

Robert S. Griswold, Jr., Dept. of Justice, Washington, D. C. (Ramsey Clark, Asst. Atty. Gen., Russell H. Smith, U. S. Atty., Hubert A. Marlow, Asst. U. S. Atty., Tulsa, Okl., Roger P. Marquis, Dept. of Justice, Washington, D. C., were with him on the brief), for appellee, U. S.

Glenn H. Chappell, Nowata, Okl. (Chappell & Maddux, Nowata, Okl., Doerner, Stuart, Moreland, Campbell & Saunders, Harry D. Moreland, Tulsa, Okl., were with him on the brief), for appellees Robert L. House and Claude N. Jordan.

Before MURRAH, Chief Judge, and PHILLIPS and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

This appeal challenges the adequacy of an award in a condemnation proceeding condemning the royalty interest and the working interest in two oil and gas mining leases, and the division of the award between the royalty interest and the working interest.

On March 4, 1959, the United States filed its declaration of taking condemning all interest to the sub-surface oil and gas and other minerals under two tracts, totaling four hundred acres. Tract numbered J–1038 and part of J–1038E–1, consisting of one hundred acres, were owned by Robert L. House, and tracts numbered J–1053 and J–1054, consisting of three hundred acres, were owned by Claude N. Jordan and Helen R. Jordan, his wife.

·Commissioners were appointed by the court to appraise and fix the value of the property taken. They filed their report in court fixing the fair cash market value or just compensation of the two tracts, as follows: Tract numbered J–1038 and part of J–1038E–1, $13,500; tracts numbered J–1053 and J–1054, $58,500. On September 26, 1960, the court approved the report of the commissioners and entered judgment for the amount found to be just compensation by the commissioners. Thereafter, on November 17, 1960, the trial court entered a separate judgment apportioning the amount of the judgment, as follows: Tract numbered J–1038 and part of tract numbered J–1038E–1—$1,960 to Onego Cor-

poration [1] for equipment on the lease and 40% of the balance of the valuation of the tract to Onego for its interest as owner of the leasehold interest, and 60% of the balance to Robert L. House for his one-eighth royalty interest in the oil and gas. Tract numbered J–1053 and J–1054 —$8,800 to Onego for equipment on the lease and 40% of the balance to Onego for its leasehold interest, and 60% of the balance to Claude N. Jordan and Helen R. Jordan for their royalty interest under the oil and gas lease.

Onego has appealed contending, in effect, first, that the finding of the value of its leasehold estate is so grossly inadequate as to amount to a taking of its property without payment of just compensation as required by the Federal Constitution; and second, that in any event, the court erred in its division of the balance of the judgment after entering judgment for the equipment on the leases.

It is fundamental and without dispute in the law that an appellate court will not set aside the judgment of a trial court, based upon findings of fact, unless there is in its judgment no substantial evidence in the record supporting the court's findings. This opinion will not be encumbered by citations of authorities to support this statement of law.

The value with which we are concerned is fair market value. That was what the Government was required to pay when it condemned these leases. Fair market value has been defined as that price which a willing purchaser would pay and a willing seller would accept under ordinary circumstances.[2] The best evidence of such value is like and comparable sales within a reasonable time preceding the condemnation. There was no evidence of such sales. Such value was sought to be established from other competent evidence.

A summary of the evidence is as follows: These were not original oil and gas leases. Oil wells had been drilled on the property and oil had been produced for many years. The operation contemplated by these oil and gas leases was what is known as water flooding. This process may be sketchily defined as one in which water is forced into wells causing concentration of oil, thus enabling the recovery of oil after the primary operations had ceased, and which could not be recovered under ordinary operations. Onego contemplated combining this property with other like property and operating it as a water-flood unit operation.

Claude Jordan, the owner of the three hundred acre tract, testified that he had pumped wells on this property since 1919. He testified to prior water-flood operations on his and other adjoining lands; that these water-flood operations had been conducted by several operators; that they had always resulted in increased production, but because of improper methods being used they had to be abandoned. House, the owner of the other tract, testified that prior water-flood operations had increased production but that due to improper methods of operation, they had to be abandoned. Both of these witnesses testified that they were familiar with water-flood operations.

Ward Edinger, a consultant petroleum engineer, testified that he was acquainted with the area and that he had researched the property to determine its fair market value. He testified that there was a recoverable reserve of oil under the two leases of 567,552 barrels. He also testified as to the cost of producing the oil, and that, in his opinion, the net profit of Onego would be $708,901. He testified that, in his opinion, the fair market value of the Jordan lease was $443,300, and the fair market value of the House lease was $48,800.

1. Herein called Onego.

2. Certain Parcels of Land in City of Philadelphia et al. v. United States, D.C.,

57 F.Supp. 768; Messer et al. v. United States, 5 Cir., 157 F.2d 793.

Paul F. Fulton, a professor of petroleum engineering at the University of Pittsburgh, testified that he was asked by Onego to make a study of these leases in question; that in his opinion there was a recoverable reserve of 553,860 barrels of oil under the two leases; that the Jordan lease had a market value of $554,000, and the House lease, a market value of $57,800.

H. Wesley Altman, President of Onego, testified that his company had paid $65,000 for the two leases and that it had spent $100,000 in cleaning them up, and that the investment was a good one.

The Government offered as its sole witness, Wayne Swearingen, a petroleum engineer specializing in oil and gas property evaluation and secondary recovery operations. He testified to a market value including the value of the equipment on the leases. He placed a total valuation on the Jordan tract of $27,500, and on the House tract of $6,500. He was in substantial agreement with Onego's witnesses as to the amount of oil in place. He testified in great detail as to the facts on which he based his ultimate conclusions of market value. He gave detailed information with respect to twenty-one other similar operations in the vicinity of this property, as well as to three previous similar operations of this particular property. He testified there was little relation between oil in place under such properties and market value because it was economically unfeasible to attempt recovery of the entire reserves. He testified to many other details of such operations in support of his conclusions. In the interest of brevity, we will not set out his testimony in detail. An examination of his testimony compels the conclusion that he was well qualified in his field and that his testimony was entitled to great weight.

■ The only way this court could find no substantial evidence to support the findings and judgment would be to hold that Swearingen's testimony was entitled to no credence, and that we cannot do. The award was over twice the valuation fixed by him. The findings were based upon sharply conflicting evidence and are, therefore, binding upon this court.[3]

■ It is further contended that, in any event, the court erred in the division of the award between the owners of the royalty interest and the working interest. After the award to Onego of an amount compensating it for the value of the equipment on the leases, the court divided the balance of the award, 60% to the royalty interest and 40% to the ⅞ths working interest. On first blush, it might seem that this was a disproportionate apportionment, but there is ample evidence in the record sustaining the court's conclusion that the cost of producing the oil would be so great as to leave little net income for the owner of the working interest. The basis of the court's decision is found in this statement by the court:

"In other words, it seems to me that Mr. Swearingen's premise is unanswerable, that as you approach the marginal area, or the economic, and the uneconomic operation, that since all of the cost must be borne by the working interest, you finally reach a point where the net income to the royalty owner would be correspondingly much greater than the net income to the working interest."

With this, we agree. In fact, Onego's expert witnesses conceded that once adopting the premise that the amount of oil recoverable is in line with the testimony of the government's witness, Swearingen, then the division by the court was correct. Onego's testimony as to the division was based on its earlier testimony that there would be a net recovery of approximately $708,901. This testimony was rejected by the Court.

We find no reversible error.

Affirmed.

3. Buena Vista Homes, Inc., v. United States, 10 Cir., 281 F.2d 476.