**UNITED STATES of America, Plaintiff-Appellant,**

v.

**344.85 ACRES OF LAND, MORE OR LESS, Situate IN PERRY COUNTY, STATE OF INDIANA (Roy H. Mullen and Charles L. Mogan, Jr.), Defendants-Appellees.**

**No. 15823.**

United States Court of Appeals
Seventh Circuit.

June 27, 1967.

Edmund B. Clark, Department of Justice, Washington, D. C., Richard P.

Stein, U. S. Atty., Edwin L. Weisl, Jr., Asst. Atty. Gen., Joseph W. Annakin, Asst. U. S. Atty., Indianapolis, Ind., Roger P. Marquis, Atty., Department of Justice, Washington, D. C., for appellant.

William L. Mitchell, David M. Keck, Mitchell & Keck, Evansville, Ind., for defendants-appellees, Charles L. Mogan, Jr., and Bernita Mogan.

Before HASTINGS, Chief Judge, and KILEY and SWYGERT, Circuit Judges.

KILEY, Circuit Judge.

The government has appealed from judgments awarding compensation in condemnation proceedings to owners of farm land in Indiana taken for flowage easements in connection with the Cannelton Lock and Dam Project for control of Ohio River floods. We affirm the judgments.

The declarations of taking were filed on May 17, 1965, for the condemnation of the easements over 103.5 acres[1] of the 213.2 acre Mullen farm and 9.33 acres[2] of the 64 acre Mogan farm near Cannelton, Indiana. A jury decided on March 2, 1966, that just compensation was $13,000 for the Mullen easement and $4,500 for the Mogan easement. This appeal followed.

The government makes two contentions: that reversible error was committed by the district court in refusing to give the government's offered instruction No. 5; and that this ruling resulted in a departure from market value as the measure of just compensation.

There was testimony by expert witnesses for the land owners and the government on the market value of the easements taken, which was the sole issue for the jury. United States v. Ham, 187 F.2d 265, 266 (8th Cir. 1951). The government experts based their estimates of value of the Mullen easement upon recent "similar or comparable" sales, and of the Mogan easement primarily upon the price the Mogans paid for their farm in 1963. There was expert testimony for the landowners that no "similar or comparable" sales could be found for an indication of the market value of the Mullen land. The estimates of these experts with respect to both easements were based on factors other than sales: crop suitability, production capacity, and their experience in appraising farms in the area. The awards were within the range of the estimates and were obviously based upon the testimony of the landowners' experts.

■ That generally was the evidentiary frame in which instruction No. 5 was offered by the government and refused by the district court. The refusal to give that instruction is the principal basis of the government's claim of reversible error. The instruction reads:

A sale in the open market of the property in question reasonably near in time the date of taking is the best evidence of its fair market value. Lacking a free market sale of the property itself reasonably near the date of taking, sales on the open market of similar or comparable property reasonably near in time to the date of taking are the best evidence of the fair market value of the property being condemned. Of course, there will be differences in the size, shape, location and immediate surroundings of two pieces of property, and perhaps differences in other respects as well, and yet to the extent that they are similar or comparable, the price for which one sold on the open market is the best evidence of the fair market value of the other. "Similar" does not mean "identical," but having a resemblance. Obviously no two properties are exactly alike in every respect, but this does not prevent their being comparable. *Sales constitute the market. You must reject them as lacking in comparability before you turn to other means of de-*

---

1. Tracts Nos. 421–E–1 and 421–E–2.

2. Tracts Nos. 1505–E–1, 1505–E–2, 1505–E–3, 1505–E–4, 1505–E–5 and 1505–E–6.

*termining market value.* (Emphasis added.)

The first sentence of instruction No. 5 tells the jury, categorically, that a sale of the property in the open market near in time is the best evidence of market value. The second sentence states categorically that, lacking a sale of the property in question, open market sales of "similar or comparable" property reasonably near in time are the best evidence. This is qualified somewhat in the next sentence which says that these sales are the best evidence to the extent they are comparable. But the instruction concludes: "Sales constitute the market. You must reject them as lacking in comparability before you turn to other means of determining market value." Thus if the jury found the other sales were at all comparable, it could not under this instruction consider evidence of productivity, return on investment, fertility or other evidence of market value presented by the landowners' experts.

We think the term "best evidence" as used in instruction No. 5 in referring to proof of market value is misleading and that the district court did not err in refusing to give that instruction. In this court the government contends for a "principle," not that recent sales are "best evidence" as the instruction states, but that such sales are the "best indication" of value. The landowners do not dispute that principle.

No case cited by the government compels the giving of this instruction. If given it could have destroyed the effect of cross-examination of government experts upon the sales they testified to, or compelled the jury to exclude testimony by the landowners' experts of other indications of value simply because of the existence of the sales.

There is language in decisions cited by the government which gives oblique support to instruction No. 5. But none of them approved an instruction in the substantial language of instruction No. 5. Most of the cases cited are concerned with rulings upon evidence. In United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943), the questions were upon evidence and an instruction not relevant here; and in Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236 (1934), the only question decided concerned exclusion of evidence of actual use of condemned property. In United States v. Lowrie, 246 F.2d 472, 474 (4th Cir. 1957), the court said that if evidence of sales is not admitted "one of the most persuasive *indications* of market values" is lost. (Emphasis added.) And in United States v. 5139.5 Acres of Land, 200 F.2d 659, 662–663 (4th Cir. 1952), the court said that an instruction to the effect that "generally speaking" recent sales furnish the most desirable basis of fixing market value "embodied sound rule as well as common sense," and that "some such instruction" would be proper on retrial.

In United States v. Ham, 187 F.2d at 270, the court quoted a rule that a comparable sale "is usually the best evidence of market value available" and quoted the rule from Welch v. TVA, 108 F.2d 95, 101 (6th Cir. 1939): "Sales at arm's length of similar property are the best evidence of market value." But the holding in *Ham* was that the exclusion of all evidence of comparable sales was reversible error. 187 F.2d at 269. And in Onego Corp. v. United States, 295 F.2d 461, 463 (10th Cir. 1961), the statement that the "best evidence" of market value was timely comparable sales was dictum, since there was no such evidence there.

■■ The "quest" at the trial was for the fair market value of the property taken and property damaged. Kinter v. United States, 156 F.2d 5 (3d Cir. 1946). Market value is what a willing buyer would pay in cash to a willing seller. United States v. Miller, 317 U.S. 369, 374, 63 S.Ct. 276, 87 L.Ed. 336 (1943). The constitutional requirement of just compensation "includes all elements of value that inhere in the property, but it does not exceed market value fairly determined." Olson v. United States, 292 U.S.

at 255, 54 S.Ct. at 708. It is the property, not the cost of it, that is safeguarded by state and federal constitutions. The Supreme Court in *Olson* said that since there were no prevailing prices for the flowage easements there through barter or sale, the market value had to be estimated as the sum under all the circumstances that could have been obtained for it. And all considerations that are fairly and substantially involved in the bargaining should be taken into account. Id. at 257, 54 S.Ct. 704.

We see no merit in the government's second argument that the district court in refusing instruction No. 5 departed from market value as the measure of just compensation.

█ We are not persuaded first of all that the evidence presented no factual basis for the value opinions of the landowners' witnesses. It is true that they did not base their opinions upon comparable sales, but as we pointed out above, the testimony they did offer was relevant to the question of market value, and where there are opinions based upon comparable sales, other testimony bearing on the question of market value is not *ipso facto* excluded.

The question of value, therefore, was for the jury and its function, despite the testimony of comparable sales by government witnesses, was to weigh testimony of both sides in search of the amount of compensation that would probably have been offered and accepted in an arm's length transaction at the time of taking. The jury would have no right to ignore testimony offered by the landowners' witnesses simply because it was not based on comparable sales even though on consideration of the testimony it might attach great or little weight vis-à-vis the testimony of sales. And it was entitled to take into consideration the effect of cross-examination of government experts upon their estimates of value from prior sales.

The court instructed the jury that the instructions must be considered as a whole, and that the sole issue in the case before it was the amount of just compensation that should be awarded to the landowners. The court described the nature and extent of the taking by the government and gave the stock instructions regarding statements of counsel or the court. It instructed on credibility, with a caution that among factors bearing on credibility were "means or lack of means of knowing the facts * * * how far, if at all [the witnesses] are either supported or contradicted * * * or * * * inconsistent statements. * *" Further instructions defined "just compensation" as including all elements of value inherent in the property to the extent of the fair market value at the date of taking; defined fair market value as the price in cash or equivalent that probably would have been paid for its highest and best use that purchasers with ability and desire to buy would willingly pay at a sale offered by one wanting to sell, both in a free transaction; that in determining the fair market value the jury should consider not only opinions of the various witnesses on market value but all other evidence which may aid in that determination, such as location, environment, suitability for particular uses, reasonable probabilities for potential future uses shown by the evidence to exist at the time of taking; and that where only part of landowners' property is taken compensation should be awarded for the fair market value of the part actually taken plus "severance damage," the reduction in the fair market value of the remainder.[3]

We conclude that these instructions did not depart from the proper market value measure of "just compensation" and that they were adequate in the cir-

---

3. It is true that the instructions the court gave did not use the words "comparable sales" and that the court stated in a colloquy outside the jury's presence his disagreement with decisions describing timely sales of comparable property as "best evidence." But the government offered no instruction on comparable sales except No. 5.

cumstances of this case and do not offend against the rules in Kimball Laundry Co. v. United States, 338 U.S. 1, 5–6, 69 S.Ct. 1434, 93 L.Ed. 1765 (1949); United States v. Miller, 317 U.S. at 373, 63 S.Ct. 276; Olson v. United States, 292 U.S. at 257, 54 S.Ct. 704; United States v. 60.14 Acres of Land, 362 F.2d 660, 665 (3d Cir. 1966); United States v. Leavell & Ponder, Inc., 286 F.2d 398, 407 (5th Cir.), cert. denied, 366 U.S. 944, 81 S.Ct. 1674, 6 L.Ed.2d 855 (1961); or Onego Corp. v. United States, 295 F.2d at 463.

■ We hold that the government was not entitled to have its proffered instruction No. 5 given to the jury, that the district court did not err in rejecting that instruction, and that the jury was fairly and properly instructed with respect to a standard for determining the sole issue of the just compensation to which the land-owners are entitled for the easements contained across their properties by the government.

Affirmed.

SWYGERT, Circuit Judge (dissenting).

I agree with the majority that the Government's requested instruction with regard to recent sales of similar properties was properly refused by the district court. By stating that "sales constitute the market" and telling the jury that it must reject sales "as lacking in comparability before * * * turn[ing] to other means of determining market value", the instruction mandated the jury to exclude other competent evidence from consideration.

The district judge erred, however, in not giving a proper instruction on the subject of recent comparable sales. Because his attention was directed to the subject by the refused instruction, the judge's duty went further than simply to refuse to give the instruction as drafted. The obligation of a trial court to properly and adequately instruct the jury on the law applicable to a case is not discharged merely by the granting or refusing of requested instructions. The court is obligated to recast an improper request so that it is unobjectionable if, in the light of the evidence which has been introduced, the subject matter of the request is a necessary element of the instructions as a whole.

There can be no question but that, in view of the evidence produced and the instruction tendered, the Government in this case was entitled to an instruction to the general effect that evidence of recent sales of similar parcels furnishes a reasonable, even a desirable, basis for determining the fair market value of condemned land.

I would reverse and remand for a new trial.