2006 OK CIV APP 11

OKLAHOMA TRANSPORTATION AU-
THORITY, Formerly the Oklahoma
Turnpike Authority, a Body Corporate
and Politic, Plaintiff/Appellee,

v.

The GEORGE ABDO TRUST DATED 10–
15–74; George Abdo and Nasib Abdo,
Trustees of the George Abdo Trust Dat-
ed October 15, 1974; and John F. Hau-
sam, Defendants/Appellants,

and

Elaine Koury Abdo, as Personal Represen-
tative of the Estate of Nezera Sader
Koury, a/k/a Nezera Koury, Deceased;
Dorothea Beatrice Rozen and Meyer
Rozen, as Co-trustees of the Dorothea
Beatrice Rozen Trust Under Indenture
Dated April 22, 1980; Nasib G. Abdo;
Paul Elic Chartouni; Mark A. Abdo;
The State of Oklahoma, ex rel. Okla-
homa Tax Commission; Ruth Ann
Righter; The Board of County Commis-
sioners of The County of Tulsa; The
Treasurer of Tulsa County, Oklahoma;
and Their Successors, Defendants.

No. 100,185.

Court of Civil Appeals of Oklahoma,
Division No. 4.

Sept. 6, 2005.

Rehearing Denied Oct. 14, 2005.

Certiorari Denied Jan. 23, 2006.

Jot Hartley, The Hartley Law Firm, PLLC, Jay, OK, for Appellee.

Robert J. Nichols, Brian A. Curthoys, Tulsa, OK, for Appellants.

Opinion by JERRY L. GOODMAN, Presiding Judge.

¶ 1 Appellants George Abdo Trust and John Hausam (Landowners) appeal the trial court's November 25, 2003, order denying their motion for a new trial following the trial court's journal entry of judgment on a jury verdict filed March 25, 2003. Landowners contend the trial court erred in this condemnation action by failing to bifurcate the trial and in certain of its evidentiary rulings.

Based upon our review of the facts and applicable law, we affirm.

## FACTS

¶ 2 The Oklahoma Transportation Authority (OTA) attempted to purchase a 15.85 acre portion of Landowners' Tulsa County real property for $271,600.00 as part of a turnpike construction project. Landowners refused the offer and court-appointed commissioners determined the value of the taking to be $589,864.00. This figure included both the fair market value of the actual taking, plus the damage to the remainder of the land not taken. The date of taking was May 21, 1999. A jury trial was requested by both parties.

¶ 3 Prior to trial, both sides filed motions in limine. Landowners' September 10, 2002, motion sought to bifurcate the trial. The proposed first trial would be on the issue of damages stemming from the taking of the 15 acres. The second trial would address whether or not Landowners' remaining 62 acres would be benefitted by the taking, and thus receive a "special and direct benefit" to the property. Landowners alleged OTA intended to sponsor a witness who would testify that despite Landowners' loss as to the 15 acres taken, the benefit they would receive to the remainder was valued in excess of one million dollars. Landowners were concerned that a jury would be confused and prejudiced if evidence of both the damages and the benefits were introduced into the same trial, and might lead to Landowners receiving less than the full amount of the value of the taking. The trial court denied this motion.

¶ 4 OTA's motion in limine sought to prevent the introduction of Landowners' evidence of a comparable sale of certain real property in the same geographic area which took place after the date of the taking. The trial court granted this motion.

¶ 5 A jury trial was held February 3, 4, and 6, 2003. The jury returned a verdict awarding Landowners $280,000.00 for the value of the taking, and $55,000.00 for the value of the damage to the remainder, for a total award of $335,000.00. This was $250,000.00 less than the commissioners' award, but $63,400.00 more than OTA's ini-

tial offer. Landowners filed a motion for new trial on April 4, 2003, which was denied in an order filed November 25, 2003. Landowners appeal.

## ISSUES

### Bifurcation

Generally, it is within the discretion of the trial court to bifurcate a trial. The court may order a separate trial of any issue upon proper motion by a party and the exercise of discretion will be disturbed only for clear abuse. *Faulkenberry v. Kansas City Southern Ry. Co.*, 1983 OK 26, 661 P.2d 510, (*Cert.denied*) 464 U.S. 850, 104 S.Ct. 159, 78 L.Ed.2d 146 (1983). . . .

*Fisher v. Northland Ins. Co.*, 2001 OK CIV APP 47, ¶ 4, 23 P.3d 296, 298.

■ ¶ 6 Landowners cite Art. 2, § 24 of the Oklahoma Constitution, which states in part:

Private property shall not be taken or damaged for public use without just compensation. Just compensation shall mean the value of the property taken, and in addition, any injury to any part of the property not taken. *Any special and direct benefits to the part of the property not taken may be offset only against any injury to the property not taken*. . . . (Emphasis added.)

Similar language is found in 27 O.S.2001, § 16(B) which defines "just compensation."

¶ 7 Landowners cite this provision as a reason for bifurcation. They argue that to present a jury with the issue of determining the value of the property taken and the issue of the value of the property not taken would, after evaluating both damage and benefit, confuse a jury; thus, bifurcation is required. Landowners cite no other Oklahoma authority in support of their position that they are entitled to a bifurcated trial on this issue.

¶ 8 OTA argues there is no showing by Landowners that the jury is incapable of distinguishing those issues. OTA contends Oklahoma Uniform Jury Instruction (OUJI) No. 25.3 instructs the jury to value not only the property taken, but that not taken. Further, OUJI No. 25.7 instructs the jury to return one lump sum award. Thus, OTA argues the OUJI instructions do not contemplate a bifurcated trial in condemnation actions. Finally, OTA argues that to bifurcate the trial would require testimony as to the value of the taking of the subject property and then require additional, duplicate testimony as to the value of the property not taken. This would require relitigation of the issues, such as comparable sales and expert qualifications. Thus, bifurcation would result in the inefficient use of court resources rather than promoting judicial efficiency.

■ ¶ 9 After reviewing the record, we conclude the trial court did not abuse its discretion in denying Landowners' motion to bifurcate the trial. Landowners were awarded $55,000.00 for damages to the remaining 62 acres not taken. The trial court specifically instructed the jury as follows:

In determining the injury to the remaining property, you may subtract any increase in its value that will result from any features of the project that will benefit the remaining property; however, the increase in value to the remaining property can never exceed the damage to it. In other words, you may offset an increase in the value of the remaining property against any injury to the remaining property, but you may not offset an increase in the value of the remaining property against the value of the property that was taken.

■ ¶ 10 This instruction tracks the language of Article 2, § 24 and 27 O.S.2001, § 16(B). We find no merit to this proposition of error.

### Comparable Sale

We conclude that whether or not evidence of comparable sales should be submitted to the jury is a matter directed largely to the trial court's discretion and that the ruling of the trial court will not be grounds for reversal or disturbed unless there has been an abuse of discretion. Thus, finding no abuse of discretion in the instant case, we will not reverse. See *Wichita Falls & N.W. Ry. Co. v. Holloman*, 28 Okl. 419, 114 P. 700; *City of*

*Tulsa v. Horwitz*, 131 Okl. 63, 267 P. 852; *Kelly v. Oklahoma Turnpike Authority*, 269 P.2d 359 (Okl.1954); *Owens v. Oklahoma Turnpike Authority*, [283 P.2d 827 (Okl.1954)], *supra; State ex rel. Dept. of Highways v. Robb*, 454 P.2d 313 (Okl.1969). *McAlester Urban Renewal Authority v. Lorince*, 1973 OK 148, ¶ 16, 519 P.2d 1346, 1350.

¶ 11 Landowners contend the trial court erred when it refused to allow the jury to consider what the parties refer to as the "Neel sale." The Neel sale was the sale of real property immediately north of, and adjacent to, the subject property. The Neel property was the same size as the subject property, and they both fronted the same section line road. The Neel property was not involved in any taking, and cannot be seen from the turnpike. This property was sold at an arms-length transaction for $1,152,272.73. The seller executed the contract on August 18, 1999, but the contract was not closed until October 15, 1999, over six months after the May 21, 1999, date of taking of the subject property.

¶ 12 Landowners contend they should have been able to introduce the terms of the Neel sale as a comparable sale price to determine the value of their property. Citing the factors that the properties are similar in size, location, shape, and have common frontage and road access, Landowners sought to introduce the Neel sale as evidence of the value of their property. OTA objected, arguing that the Neel sale took place after the date of OTA's taking of the subject property. OTA contends the sale price was inflated because it was influenced by the turnpike project. OTA contends because the Neel property benefitted from its now close proximity to the turnpike, its sale price was not an accurate reflection of the comparable value of the subject property, and is thus inadmissible. The trial court agreed and excluded the Neel sale.

¶ 13 Landowners' brief in chief does not cite any Oklahoma cases in support of its position. Landowners again cite Article 2, § 24, as set out above, and note only that the time for fixing the damages is the date of the taking, citing *Grand Hydro v. Grand River Dam Authority*, 1943 OK 158, 39 P.2d 798.

Landowners' argument in its brief in chief is merely that there is no authority, one way or the other, which would prohibit the introduction of a comparable land sale made after the date of taking, a sale which in turn was influenced by a general, specific, or direct benefit to that property. While we agree with Landowners that there appears to be no Oklahoma case directly on point, for the reasons set out below, we find no merit to Landowners' proposition of error.

¶ 14 The United States Supreme Court in *United States v. Miller*, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943) addressed the issue of whether a landowner whose property was taken was entitled to an enhanced value because of the benefit conferred on the property by the announcement of a federal project necessitating the taking. In *Miller*, there was a delay between the announcement of the federal project and the determination of what specific property would be affected by the project. In the interim, land prices rose due to real estate development. When the government finally condemned the subject property, its owners sought to value their property by comparing it to adjacent property, whose value had increased significantly in the time between the announcement and commencement of the federal project. The federal district court held that the value of the taking should be as of the date the federal government first announced the project, not the date of condemnation. This meant any increase in value of the subject property due to the imminent federal project would be omitted from consideration. The landowners appealed.

¶ 15 After holding the landowners were not entitled to such an enhanced value, *Miller* then pronounced the rule which we find dispositive:

If a distinct tract is condemned, in whole or in part, other lands in the neighborhood may increase in market value due to the proximity of the public improvement erected on the land taken. Should the Government, at a later date, determine to take these other lands, it must pay their market value as enhanced by this factor of proximity. *If, however, the public project from the beginning included the taking of cer-*

*tain tracts but only one of them is taken in the first instance, the owner of the other tracts should not be allowed an increased value for his lands which are ultimately to be taken any more than the owner of the tract first condemned is entitled to be allowed an increased market value because adjacent lands not immediately taken increased in value due to the projected improvement.*

*Miller,* at 376, 377, 63 S.Ct. 276 (emphasis added).

■ ¶ 16 In short, setting aside for the moment the critical fact that the Neel sale took place after the date of taking, and its value was no doubt positively influenced by the taking, we are persuaded that the rule in *Miller* applies here: a landowner cannot benefit by speculation in prices caused by the announcement of the project in the first instance.

¶ 17 Applying this rule to the facts in our case, it seems clear that the best evidence of comparable sales of property near the subject property are sales that take place prior to the date of taking. This eliminates any price inflation directly attributable to the commencement of the project. Had the Neel sale taken place prior to the date of the taking, we would agree with Landowners that the Neel sale should have been admitted into evidence. As it stands, however, Landowners are essentially asking OTA to pay a higher price for the subject property when that higher asking price is in turn based upon the sale of an adjacent property whose value increased only because of the commencement of OTA's turnpike project.

¶ 18 Our analysis is further strengthened by a review of 27 O.S.2001, § 13, which states in relevant part:

Any person, acquiring agency or other entity acquiring real property for any public project or program described in Section 9 of this title *shall comply with the following policies:*

3. Before the initiation of negotiations for real property, an amount shall be established which is reasonably believed to be just compensation therefor and such amount shall be promptly offered for the property. In no event shall such amount

be less than the approved appraisal of the fair market value of such real property. *Any decrease or increase in the fair market value of real property prior to the date of valuation caused by the public improvement* for which such property is acquired, or by the likelihood that the property would be acquired for such improvement, other than that due to physical deterioration within the reasonable control of the owner, *will be disregarded in determining the compensation for the property.* (Emphasis added.)

■ ¶ 19 The policy set out by the Legislature governing the taking of private property clearly requires that any increase or decrease in the market value of the subject property that occurs prior to the taking must be disregarded if that increase or decrease is caused by the announcement of the public improvement project itself. Since such an increase in value must be disregarded if it occurs before the taking, it seems axiomatic to this court to conclude that any such increase in value that occurs after the taking must also be disregarded. Any other interpretation of this statute renders it a nullity.

¶ 20 We note another division of this court, in *State ex rel. Dept. of Transp. v. Panell,* 1993 OK CIV APP 60, 853 P.2d 244, has held:

Further, it was error for the Court to allow evidence of comparable sales which took place after the taking. See *Onego Corp. v. U.S.,* 295 F.2d 461 (10th Cir.1961).

*Id.* at ¶ 5, 853 P.2d at 246.

¶ 21 *Onego* stated:

The value with which we are concerned is fair market value. That was what the Government was required to pay when it condemned these leases. Fair market value has been defined as that price which a willing purchaser would pay and a willing seller would accept under ordinary circumstances. The best evidence of such value is like and comparable sales within a reasonable time *preceding* the condemnation. (Footnotes omitted, emphasis added.)

*Onego,* 295 F.2d at 463.

¶ 22 These authorities clearly advise that the trial court's denial of admission of the

Neel sale into evidence was eminently correct, and we therefore find no error was committed.

¶ 23 The trial court's denial of Landowner's motion for new trial is AFFIRMED.

STUBBLEFIELD, J., concurs, and RAPP, V.C.J., concurs in result.